IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RANDALL DUNCAN,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF HALL, a Nebraska political subdivision; DAISY BUENO, R.N., in her individual and official capacities; TIM MASON, N.P., in his individual and official capacities; CAROLYN FERGUSON, N.P., in her individual and official capacities; and JASMINE MAYO, R.N., in her individual and official capacities,,<br><br>Defendants. | Case No.<br><br><br><br>**COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |

Randall Duncan, Plaintiff in the above-captioned matter, by and through his counsel of record, for his cause of action against Defendants, states as follows:

## PARTIES, JURISDICTION AND VENUE

### 1.

Randall Duncan is a prisoner in the custody of the United States Bureau of Prisons. At all relevant times, he was incarcerated as a pretrial detainee in the Hall County Detention Center in Grand Island, Hall County, Nebraska.

### 2.

Hall County, Nebraska is a Nebraska political subdivision.

### 3.

Defendant Daisy Bueno, R.N., and Jasmine Mayo, R.N., are sued in their individual and official capacities; at all relevant times, they were employees or agents of Hall County, providing

nursing services at the Hall County Detention Center ("HCDC"). Similarly, Tim Mason, N.P., and Carolyn Ferguson, N.P., are also employees or agents of Hall County, providing nurse practitioner services at HCDC at the relevant times. They, too, are sued in their individual and official capacities. All individual Defendants were, at the relevant times, acting in the course and scope of their employment or agency with HCDC and were acting under color of law.

4.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 42 U.S.C. §§ 1983 and 1988. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Hall County, Nebraska.

## FACTUAL BACKGROUND

5.

Beginning in June 2023, RANDALL was incarcerated at HCDC, awaiting disposition of criminal charges pending in United States District Court.

6.

Upon his admission to HCDC, RANDALL advised the HCDC medical personnel of multiple chronic medical conditions. These conditions included hypertension, asthma and chronic obstructive pulmonary disorder. RANDALL also disclosed that he was a former smoker and that he used methamphetamine as recently as 2 months before his admission to HCDC. He was then 63 years old.

7.

During RANDALL's detention at HCDC, his COPD progressed. HCDC measured RANDALL's peak expiratory flow (PEF) volumes, which are the volume and rate of air that a

patient can forcefully breathe out of their lungs. Per those measurements, HCDC knew that RANDALL had chronically-diminished air flow in his lungs, consistent with advanced COPD.

8.

HCDC also knew RANDALL requested a second mat for his bunk to elevate his head to assist with breathing, and often complained to HCDC medical personnel of respiratory difficulties.

9.

COPD is a risk factor for heart attack.

10.

A history of smoking also increases a patient's risk for heart attack.

11.

A history of methamphetamine use increases a patient's risk for heart attack.

12.

RANDALL complained to HCDC medical personnel of numbness and tingling in his hands and feet.

13.

Circulatory problems increase a patient's risk for heart attack.

14.

On October 17, 2023, RANDALL complained to BUENO of chest pain radiating into his left arm. He was not sure if it might be acid reflux. BUENO reviewed his symptoms with FERGUSON.

15.

Despite RANDALL's risk factors for heart attack, BUENO and FERGUSON did not order

3

any further study.

16.

BUENO and FERGUSON did not consult with a medical doctor, nor with the United States Federal Marshal Service, about whether RANDALL's risk factors for heart attack and complaints of chest pain warranted further study.

17.

On the early morning of January 1, 2024, a security corporal brought RANDALL to the HCDC Medical Unit.  BUENO was on-duty.

18.

RANDALL reported sharp, constant pain in his chest, radiating to his left arm.  He told BUENO that the pain had begun in the night and had woke him up.

19.

BUENO observed RANDALL to be guarding and rubbing at his chest area.

20.

BUENO checked RANDALL's vital signs.  She found his blood pressure to be 170/111.

21.

A blood pressure reading of 170/111 is dangerously high.

22.

BUENO reviewed RANDALL's symptoms with MASON.  Then, BUENO and MASON ordered omeprazole, an over-the-counter medication used to treat stomach acid.

23.

BUENO and MASON also ordered sublingual nitroglycerin.

4

24.

BUENO and MASON did not order further study of RANDALL's symptoms.

25.

BUENO and MASON did not consult with a medical doctor, nor with the United States Federal Marshal Service, about whether RANDALL's risk factors for heart attack and symptoms warranted further study.

26.

RANDALL was returned to his cell. The only instructions BUENO and MASON gave him was to let correctional officers know if his symptoms worsened.

27.

BUENO and MASON did not follow up with RANDALL again before the end of their shift.

28.

Nor did BUENO and MASON order the oncoming shift(s) to follow up with RANDALL.

29.

In fact, at the time that he presented at the Medical Unit on January 1, 2024, RANDALL was experiencing a heart attack.

30.

The earlier that a patient's heart attack is identified and arrested, the greater likelihood that the patient will not sustain lasting damage to the muscles and structures of the heart.

31.

At 1646 hours on January 1, 2024, MAYO recorded in RANDALL's chart that "D/T increase in chest discomfort, inmate is to be seen in provider clinic 1/5/24. BP to be taken daily x

3 days."

32.

MAYO did not consult with a medical doctor about whether RANDALL's risk factors for heart attack and symptoms warranted further study.

33.

BUENO and MASON next reported for duty shortly before 2300 hours, which is the beginning of the overnight shift on January 1, 2024.

34.

Upon their arrival at HCDC, neither BUENO nor MASON summoned RANDALL to the Medical Unit or went to his cell to examine him, to see how his symptoms had developed since they last saw him.

35.

At approximately 0220 on January 2, 2024, a correctional officer reported to BUENO that a patient was asking to have his blood pressure checked. That patient was RANDALL.

36.

RANDALL reported to BUENO that his chest hurt like hell, and had been hurting all day. He was rubbing his chest area.

37.

BUENO checked RANDALL's vital signs. His blood pressure was 168/110.

38.

The blood pressure reading of 168/110 is actually slightly lower than the reading BUENO took of RANDALL, and reported to MASON, on January 1, 2024.

39.

BUENO reviewed RANDALL's symptoms and vital signs with MASON.  BUENO and MASON determined that RANDALL should go to the emergency room of Grand Island Regional Medical Center.

40.

Emergency room personnel charted RANDALL's report that he had been experiencing chest pain for two days, and that he had experienced a more minor level of chest pain intermittently for a few months.

41.

Hospital medical personnel performed laboratory testing and an electrocardiogram.  This testing confirmed that RANDALL was experiencing a heart attack.

42.

The elevation of RANDALL's cardiac enzymes at the time of his presentation at the hospital shows that more likely than not, he began experiencing this heart attack prior to when he advised BUENO and MASON that he was experiencing chest pain.

43.

Medical personnel performed a cardiac catheterization, and placed a stent in RANDALL's right coronary artery.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 - Individual Defendants

44.

RANDALL had a right under the United States Constitution to be free from deliberate

7

indifference to his health and safety, as well as a right to due process and equal protection, by governmental entities and their employees and agents.

45.

At all times relevant to this Complaint, Individual Defendants were acting under color of law – under the constitutions, statutes, administrative rules, customs, policies and usages of HCDC, the State of Nebraska and the United States – and Individual Defendants had assumed the responsibilities, activities and rights involved in exercising their roles as members of HCDC's medical staff.

46.

Individual Defendants acted with deliberate indifference to RANDALL's known and recognized constitutional and legal rights to to due process, to bodily integrity, and to be free from deliberate indifference to his health and safety. Individual Defendants actively participated in the deprivation of RANDALL's constitutional rights by causing RANDALL's suffering, fear and injury. This includes, but is not limited to:

a.    BUENO and FERGUSON's refusal to order further study or medical consultation on October 17, 2023, despite their knowledge of RANDALL's risk factors and their documented recognition that RANDALL was experiencing cardiac symptoms;

b.    BUENO and MASON's refusal to order further study or medical consultation, despite their knowledge of RANDALL's risk factors and their documented recognition that RANDALL was experiencing cardiac symptoms;

c.    BUENO and MASON's departure from HCDC without providing orders for medical personnel in the oncoming shifts to assess RANDALL and compare any symptoms to what he reported to them;

d.    BUENO, MASON and MAYO's decisions to not transport RANDALL for

8

outside medical evaluation on January 1, 2024;

e.    MAYO's decision to not seek further study or consultation for RANDALL at 1646 hours on January 1, 2024, despite her knowledge of RANDALL's risk factors and their documented recognition that RANDALL was experiencing cardiac symptoms;

f.    BUENO and MASON's decisions, upon reporting for duty at 2300 hours on January 1, 2024, to do other activities for several hours instead of immediately assessing RANDALL and comparing any symptoms to what he reported to them earlier that day.

47.

Individual Defendants' conduct, within their duties as members of HCDC's medical staff and under color of law, deprived RANDALL of rights, privileges and immunities secured by the United States Constitution.  RANDALL was deprived of his constitutional interests in substantive due process, bodily integrity and freedom from deliberate indifference to his health and safety.

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – COUNTY OF HALL

48.

COUNTY is charged with the responsibility and duty to protect and serve the public by properly hiring, training and controlling medical personnels under its command, including Individual Defendants.  This duty includes promulgation and enforcement of rules, regulation and training regarding the assessment of detainees' medical symptoms and consultation with outside medical providers.

49.

COUNTY's duty includes a duty to train its medical personnel in the importance of seeking consultation with more credentialed medical professionals for evaluation of cardiac symptoms,

9

particularly when HCDC has already identified that the patient is at risk of heart attack. It also includes a duty to train its medical personnel to follow up, and communicate between shifts, for detainees who have reported symptoms of heart attack but who have for whatever reason not been transported to an emergency room for medical assessment.

50.

COUNTY failed to promulgate adequate policies, training, rules and regulations relating to the consultation with outside medical professionals for at-risk detainees who report symptoms of a life-threatening medical event.

51.

COUNTY established through tacit authorization or explicit instruction a policy or custom of refusing to seek consultation with outside medical professionals, in the interest of convenience and cost savings. That policy was enacted and enforced with deliberate indifference in the constitutional rights of persons effected thereby.

52.

COUNTY failed to properly train and control medical personnel under its command, including Individual Defendants, and failed to ensure compliance with any existing training and regulations regarding consultation with outside medical professionals for reports of symptoms of life-threatening medical events; that failure has resulted in a policy or custom of inadequate training on the subject of detainees' medical health and safety.

53.

CITY's custom of failing to properly train and control medical personnel under its command, including Individual Defendants, and its failure to ensure compliance with any training and

10

regulations on consultation with outside medical professionals, amounts to deliberate indifference to the rights of detainees incarcerated in HCDC, including the rights of RANDALL herein.

54.

COUNTY's custom and policy of prioritizing convenience and cost savings over the health and safety of detainees experiencing life-threatening medical events, and COUNTY's failure to properly train and control medical personnel under its command, including Individual Defendants, directly and proximately caused the medical outcome that RANDALL sustained, and that more likely than not would have been averted had he been promptly transported for medical evaluation on October 17, 2023 and/or January 1, 2024.

## PUNITIVE DAMAGES

55.

In addition to compensatory damages, RANDALL hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and callous acts and omissions of Defendants, as alleged herein. Defendants' acts and omissions in this case were so culpable in nature that they constitute reckless indifference and callous disregard for the law and for the rights of detainees, including RANDALL. Defendants committed the acts and omissions alleged herein and subjected RANDALL to conscious physical and emotional harm. Their actions should be punished, and an example should be made so that these actions and omissions are not repeated.

56.

This instance of reckless and callous indifference to RANDALL's constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

11

## ATTORNEY'S FEES

### 57.

As a result of Defendants' actions as alleged herein, RANDALL has been required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

## DAMAGES

### 58.

Defendants' acts and omissions as set forth above have resulted in RANDALL's fear, pain and suffering and a life expectancy diminished beneath what he would otherwise anticipate. RANDALL thus seeks recovery for the following damages:

A.   Compensatory damages in an amount to be proven at trial, for his physical and mental pain and suffering and the reduction of his life expectancy beneath what he would otherwise anticipate;

B.   Compensatory damages for the violation of RANDALL's rights under the federal and state Constitutions;

C.   Punitive damages to punish and deter the conduct alleged in this Complaint;

D.   Attorney's fees; and

E.   The costs of this action and such other and further relief as this Court deems equitable and proper.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows:

A.   Plaintiff prays for damages in an amount which will fairly and justly compensate for RANDALL's physical and emotional injuries and the violation of RANDALL's civil rights, his pain and suffering and other consequential damages flowing from the violations and torts set forth herein;

B.   Punitive damages in an amount sufficient to adequately punish Defendants and to

deter future conduct of the type alleged in this Complaint;

C.      For attorney's fees pursuant to 42 U.S.C. § 1988; and

D.      For the costs of this action and for such other and further relief as this Court deems equitable and proper.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff **requests** that this matter be tried to a jury in Lincoln, Nebraska.

RANDALL DUNCAN, Plaintiff,

By:      /s/ *Maren Lynn Chaloupka*
Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Law LLC
1906 Broadway
P.O. Box 1724
Scottsbluff, NE 69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

13